UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANDREAK KING,

Plaintiff,

v.

BARRY VIRTS, ROBERT MILBY, F. CRANE, C. VERPLANK, R. MORRISON, J. HENDLER

FOURTH AMENDED COMPLAINT

18-CV-6023-EAW

Plaintiff, ANDREAK KING, *pro se*, for his Fourth Amended Complaint against the Defendants, alleges as follows:

## PARTIES

1. Plaintiff, ANDREAK KING ("Mr. King") has been a prisoner of the State of New York in the custody of the New York State Department of Corrections since 2016. He is currently confined at the Wayne County Jail in Lyons, New York.

2. Defendant BARRY VIRTS was the Wayne County Sheriff until 2021. During his tenure as County Sheriff, Defendant Virts was charged with overseeing the operation of the Wayne County Jail and was responsible for the welfare of the inmates housed therein.

3. Defendant ROBERT MILBY is the current Wayne County Sheriff. As the current Wayne County Sheriff, Defendant Milby oversees the operation of the Wayne County Jail and is responsible for the welfare of the inmates housed therein.

4. Defendant F. CRANE is and was a correctional officer at the Wayne County Jail. At all times relevant to this Complaint, Defendant Crane held the rank of Sergeant.

5. Defendant C. VERPLANK is and was a correctional officer at the Wayne County Jail. At all times relevant to this Complaint, Defendant Verplank held the rank of Sergeant.

6. Defendant R. MORRISON is and was a correctional officer at the Wayne County Jail. At all times relevant to this Complaint, Defendant Morrison held the rank of Sergeant.

7. Defendant J. HENDLER is and was a correctional officer at the Wayne County Jail. At all times relevant to this Complaint, Defendant Hendler held the rank of Sergeant.

8. Plaintiff's claims are raised against each Defendant in his individual and official capacity.

9. At all times referenced herein, the defendants were acting under the color of state law.

## JURISDICTIONAL STATEMENT

10. This action is brought pursuant to 42 U.S.C. §§ 1983, 1988 for violations of the Fourteenth and Eighth Amendments to the U.S. Constitution. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343.

11. Venue in the United States District Court for the Western District of New York is appropriate pursuant to 28 U.S.C. § 1391.

## FACTS

12. Mr. King has been a person under incarceration since July of 2016. The claims set forth in this Fourth Amended Complaint arise from two periods of confinement at the Wayne County Jail ("the Jail")—first, for a period beginning in July of 2016 and lasting until approximately June of 2019 and second, for a period beginning November of 2020 and lasting through the present.

13. Although Mr. King was initially confined at the Jail as a pre-trial detainee, a verdict was handed down on August 30, 2016 in the initial underlying criminal case against him. Mr. King remained confined at the Jail until at least 2019, when he was transferred to the Attica Correctional Facility. Mr. King was then remanded to the Jail in November of 2020, following his release from prison, in order to face new charges.

14. As of the date of this document's filing, Mr. King remains confined at the Jail.

15. Mr. King is an individual with diagnosed and well-documented mental health conditions requiring ongoing mental health treatment. Among other things, Mr. King has been diagnosed with post-traumatic stress disorder, antisocial personality disorder, anxiety, and depression.

16. Despite their awareness of Mr. King's severe mental health conditions, and an understanding of the negative impact extreme isolation can cause to those of even the soundest minds, Defendants held Mr. King in a continuous keep-lock/solitary confinement status for 18 months during his initial confinement at the Jail. During this period, Mr. King was deprived him of access to mental health care and programs, including anger management programs and the general adjustment programs.

17. Upon Mr. King's return to the Jail in 2020, the Defendants continued to isolate Mr. King in keeplock/solitary confinement without access to appropriate physical or mental health care and programs. Mr. King continues to remain in his cell, in isolation, for up to 23 hours in direct violation of New York Correction Law.

18. Despite knowledge of Mr. King's mental health condition, Defendants repeatedly and routinely denied Mr. King access to necessary mental health resources and instead cruelly subjected him to isolation, ridicule, and unnecessary, excessive, physical restraint. His primary human contact during his confinement in keep-lock/solitary confinement was/has been the Defendants, who have not only deprived him of necessary mental health treatment, but have otherwise subjected him to unnecessary harassment and excessive physical force.

19. For example, on or about November 22, 2017, Mr. King attempted to hang himself using a bedsheet in his cell. Mr. King lost consciousness during the failed attempt. When he

regained consciousness, Mr. King was in handcuffs and shackles and Defendant Crane placed him in a headlock compromising his ability to breath for a second time. While restrained, Defendant Crane ordered other correctional officers in the area to physically beat and mase Mr. King's face and body.

20. Again, on December 9, 2017, Mr. King advised a correctional officer by the last name of Rose that he was going to kill himself. The declaration was ignored and treatment was not offered.

21. In response to his many pleas that the Defendants allow him access to mental health programs and treatment, particularly with respect to his desire to end his own life, Mr. King has been repeatedly advised that the Defendants do not care and that he is to remain in isolation.

22. On January 25, 2018, Defendant Crane, along with other unnamed correctional officers, conducted a search of Mr. King's cell. Mr. King was on keeplock at the time. Unprovoked, Defendant Crane placed Mr. King in a headlock while another officer mased and punched Mr. King in the face and head. Mr. King was then placed in handcuffs that were applied so tightly that Mr. King has permanent scarring of the wrists.

23. Mr. King has also been deprived access to appropriate medical care. The Defendants have refused requests that he receive prescribed medications or blood pressure checks.

24. Most recently, in or about December of 2021, Mr. King was deprived of medical care for an obvious and deteriorating respiratory infection. The failure to allow timely and appropriate examination and treatment by a medical professional caused the infection to become so severe that Mr. King ultimately required hospitalization.

25. The Defendants' abuse of Mr. King has exacerbated Mr. King's already significant mental health problems, causing him to suffer, among other things, increased mental distress, suicidality and nightmares

26. There is no legitimate justification for the ongoing, unnecessary, and wanton infliction of mental and physical pain upon Mr. King, by the Defendants. The Defendants acted intentionally to bring about Mr. King's suffering or, at best, recklessly failed to mitigate the risks that they knew, or should have known, solitary confinement would pose to Mr. King.

27. The Defendants' purposeful and/or reckless conduct was intended only to serve as unsanctioned, additional punishment due to the controversial nature of his underlying criminal offenses.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

28. Mr. King has appropriately filed numerous grievances related to the conduct alleged herein. All grievances against the Defendants have been summarily dismissed by the Defendants.

**AS FOR HIS FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS UNDER 42 U.S.C. § 1983 FOR VIOLATIONS OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

***Conditions of Confinement Claim—Unlawful Isolation***

29. Each of the Defendants named herein subjected Mr. King to unlawful and cruel conditions of confinement while acting under color of state law.

30. Defendants' conduct was intentional and/or reckless.

31. Upon information and belief, Defendants acted with sufficiently culpable states of mind and intended to inflict retaliatory and extra-judicial punishment on Mr. King due to the nature of his underlying criminal charges.

32. Defendants subjected Mr. King to ongoing keeplock status/solitary confinement, without appropriate access to mental health treatment and programs, for more than two years, despite knowing of Mr. King's mental health conditions and the impact that isolation can have on such an individual.

33. In fact, Mr. King made at least one suicide attempt at the Jail, of which the Defendants are well aware.

34. Defendants intentionally placed Mr. King in isolation for the purpose of making Mr. King suffer.

35. Defendants otherwise failed to mitigate the risks isolation would cause a mentally ill person such as Mr. King.

36. Moreover, Mr. King continues to be subjected to lengthy, unlawful periods of keeplock confinement.

37. Defendants' confinement of Mr. King violates the requirements of the newly amended New York Correction Law, which states that mentally ill individuals requiring segregated confinement must be placed in the least restrictive setting necessary for the safety of incarcerated persons, staff, and the facility; with access to appropriate mental health professionals; and with at least four hours of out-of-cell congregate programming, services, treatment and/or meals with an additional one hour of recreation. Recent changes to the Correction Law are best summarized by S2836 (EXHIBIT A) also known as the "HALT Solitary Confinement Act," which was signed into law in 2021.

38. Prior to summarily banishing Mr. King to keeplock, the law also requires that Mr. King be provided an evidentiary hearing wherein he may confront any allegations that he

committed a specified heinous or destructive disciplinary offense necessitating his removal from the general population. *See id.*

39. Mr. King has been deprived of these protections of New York law without access to an evidentiary hearing and without regard or accommodation for his documented mental health problems.

40. Defendants VIRTS and MILBY are, or should be, well aware that the Jail is improperly placing individuals such as Mr. King in keeplock/solitary confinement, without an evidentiary hearing, and for excessive, continuous stretches of time, without appropriate out-of-cell opportunities. Defendants have failed to bring their facility into compliance with New York law.

41. Instead, Defendants have repeatedly placed Mr. King on keeplock, without access to appropriate mental health resources, and without the appropriate notice and hearing, because they wish to punish him for the crimes underlying his confinement in the Jail in the first instance.

***Deprivation of Medical Care***

42. Mr. King has been repeatedly deprived of adequate mental and physical health care and has instead been forced to remain in isolation.

43. The deprivation of adequate care has been sufficiently serious and, in fact, resulted in at least one potentially fatal incident (the 2017 suicide attempt) and at least one hospitalization (the 2021 respiratory infection).

44. The Defendants were aware of Mr. King's mental health problems but repeatedly and inhumanely ignored his requests for help.

45. Similarly, Defendants ignored Mr. King's requests for care related to his respiratory infection symptoms, which is particularly shocking given that many of symptoms overlapped with the known symptoms of COVID-19.

46. The Defendants have unnecessarily, wantonly, and repeatedly inflicted physical and mental pain on Mr. King and have purposefully deprived Mr. King of access to necessary health care and programs, including anger management and general adjustment, that are available to detainees.

47. These deprivations of appropriate care have been intentional and are, upon information and belief, intended to be unlawfully punitive.

***Excessive Force Claim***

48. Following his suicide attempt in 2017, Defendants acted maliciously and sadistically to cause Mr. King further, unwarranted harm by placing him in a choke hold, using mase on his face, and beating him as he regained consciousness following a suicide attempt.

49. Rather than assist a human being in a mental health crisis, the Defendants unnecessarily and wantonly restrained, mased, and beat Mr. King after he regained consciousness after his attempted hanging.

50. The conduct of the Defendants was excessive to the need in responding to an unconscious person who had just attempted to hang himself.

51. Such conduct is objectively unreasonable and was purposeful.

52. As a direct and proximate result of the Defendants' unlawful and extreme misconduct, Plaintiff has suffered mental anguish, increased suicidality, physical injury, and pain and suffering.

53. By reason of the foregoing, Mr. King demands judgment as follows:

a. Injunctive relief prohibiting the Defendants from subjecting him to further, unlawful keeplock detention absent the provision of adequate mental health resources and a pre-detention evidentiary hearing.

b. On the First Cause of Action, in favor of Plaintiff in the amount of $12,500.

c. That punitive damages be awarded to Plaintiff in the amount of $50,000.

d. Plaintiff's costs in bringing this lawsuit.

e. For such other and further relief as to this Court may seem just and proper.

**PLEASE NOTE: PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY**

DATED: ~~May ___,~~ December 25 2022
Lyons, New York

Respectfully Submitted,

Andreak King
______________________
Andreak King, *Pro Se*

**VERIFICATION**

I have read the foregoing Complaint and hereby verify that the matters alleged therein are true, except as to matters alleged upon information and belief, and as to those matters, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

EXECUTED at Lyons, New York on 12/25/2022.

Andreak King
______________________
Andreak King, Plaintiff, *Pro Se*